**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Carl E. Reynolds, | |
| Plaintiff | No. 3:17-cv-01801 |
| v. | (Judge Richard P. Conaboy) |
| Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant | |

---

**MEMORANDUM**

**1.    Procedural background.**

We consider here Plaintiff's appeal from an adverse decision of the Social Security Administration ("SSA") or ("Agency") regarding his application for Disability Insurance Benefits ("DIB") or Supplemental Security Income Benefits ("SSI"). Plaintiff's application was initially denied at the administrative level whereupon he requested a hearing before an Administrative Law Judge ("ALJ"). He received that hearing on March 3, 2016. The ALJ denied Plaintiff's application by written decision dated March 24, 2016. (Doc. 8-2 at 8-25). The Appeals Council denied Plaintiff's request for review by notice dated September 19, 2017. Plaintiff then appealed to this Court by Complaint (Doc. 1) dated

October 4, 2017. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405g.

## II. Testimony before the ALJ.

A hearing was conducted before ALJ Michelle Wolfe in Wilkes-Barre, Pennsylvania on March 3, 2016. Testimony was taken from the Plaintiff and from Pat Tularey, a vocational expert ("VE"). Plaintiff was represented at the hearing by attorney Jonathon P. Foster. The testimony may be summarized as follows.

Plaintiff resides in a two bedroom trailer in Wysox, Pennsylvania with a roommate. He was born on November 19, 1967 and was forty-eight years of age on the date of the hearing. He indicated that he became disabled effective January 29, 2012 but, due to the res judicata effect of the final decision on a previous claim, his attorney indicated that the onset date of Plaintiff's disability should be considered January 10, 2014. (R. at 64). [1]

Plaintiff stated that he is five feet nine and one-half inches tall, weighs 181 pounds, and is right hand dominant. He has a current driver's license but stated that he has not driven in more than one year because of the effects of medication that he takes and his lack of access to a vehicle. He completed high

---

[1] Despite this acknowledgment by Plaintiff's counsel, the ALJ considered January 29, 2012 as Plaintiff's onset date and reviewed medical evidence that preceded that date. (R. at 14).

school in a vocational/technical program with emphasis on building trade maintenance. He is divorced with a sixteen year old daughter of whom he has joint custody with his former spouse. His daughter's primary residence is with her mother. Plaintiff is in constant pain, experiences memory loss, and becomes "skittish" around other people. He last worked in 2012 as a laborer in the gas industry on a "frac site". (R. 64-66).

Plaintiff received injections in February and July of 2015 related to his back symptomology. He goes once each week to see a counselor and once each month to see a psychiatrist. He has had one hospital admission since 2012 which was caused by chest pains. He was prescribed nitroglycerine for these chest pains, continues to take it, and is on several other medications as well. He experiences side effects from these medications including weight loss, memory loss, fatigue, and trouble sleeping. (R. 67-69). Plaintiff usually goes to bed about 3:00 a.m. and rises at about 11:00 a.m. He does no chores at home unless his roommate is present to help him with his balance. His balance is compromised to the point that he has fallen out of the shower twice and into the stove once. He does no housework of any kind. He does no gardening or lawn work of any kind. His roommate does all shopping without assistance of any kind from him. He does not read nor does he use a computer. (R. 69-70).

Plaintiff smokes approximately six cigarettes each day and is trying to quit smoking. He turns the television on during the day "just to hear other people's voices." Other than paying casual attention to the television, Plaintiff does little else all day. He last went to physical therapy in December of 2014 but continues to try to perform stretching movements for his back pain. He estimates that he can walk ten to fifteen feet with the assistance of a cane. He reports that he can stand for five to ten minutes before needing to sit down due to tingling and burning in his feet, knees, and hips. When he sits he begins to experience the same sensations in his hands. He neither lifts nor carries anything. (R. 71-72).

Upon examination by his attorney, Plaintiff stated that he was identified as a special education student from grades six through twelve. He stated that he spends most of the day laying on his side on a couch. His doctors have suggested to him that the only remaining alternative to afford him relief from his back and leg pain is another surgery. Toward that end, he is going to a consultation at Geisinger Medical Center. (R. 73-74).

Plaintiff stated that he performs no household chores including vacuuming, sweeping, and taking out the trash. He never entertains friends or visitors, never attends social activities, and never goes out to eat. He stated that he has problems being around others and he feels the need to get away from them. He

tries to deal with such situations but finds it difficult. (R. 75).

Plaintiff worked at various jobs from 1984 through some date in 2012. He currently takes the medicine Norco four times daily and he finds that it impairs his ability to concentrate. He stated that he gets four to five hours sleep on average each night. He experiences a tingling and burning sensation constantly in his dominant (right) hand. (R. 76-77).

A vocational expert ("VE") also testified. The VE reviewed Plaintiff's work history in the preceding fifteen years and found that Plaintiff's work had all been classified as either medium or heavy exertional level and as unskilled or, in one instance, semi-skilled work. After that recitation, the ALJ asked the VE to assume a hypothetical claimant of the same age, educational level, and work history as the Plaintiff who has the residual functional capacity to work at a light exertional level with additional limitations including: frequent lifting/carrying up to ten pounds and occasional lifting/carrying up to twenty pounds; standing or walking no more than two hours in an eight hour workday; no pushing or pulling with the lower extremities; no exposure to cold, wetness, humidity, and hazards including moving machinery and unprotected heights; only occasional balancing, stooping, crouching, crawling, and kneeling; no use of ladders, stairs, or scaffolds; and limitation to a low-stress work

environment confined to simple, routine tasks and only occasional interaction with the public, co-workers, and supervisors. Based on these assumptions, the VE stated that the hypothetical individual would be unable to perform any of Plaintiff's past relevant work. (R. 77-80).

The VE stated, however, that the hypothetical individual could perform other jobs that exist in significant numbers in the national economy including "bench worker" and "metal and plastics worker"; These jobs were categorized by the VE as "sedentary" and the hypothetical individual's need for a cane or need to transfer positions regularly from sitting to standing would have no effect on the hypothetical individual's ability to perform these jobs. However, if additionally limited such that the hypothetical individual would need additional breaks and be off task for than 20% of the workday, the vocational expert responded that the hypothetical individual could not maintain full time employment. (R. 81-82).

The Plaintiff's attorney asked the VE whether, assuming the same hypothetical individual and further assuming he also had impairment in his dominant hand that precluded more than occasional gripping and fingering, that hypothetical individual would be able to perform as a "bench worker" or "plastics worker". The VE responded that, given the hand limitations, the hypothetical individual would be unable to perform the jobs

identified. The VE testified further that, if the hypothetical individual was limited to sitting four hours in a workday or that the use of narcotic medications would cause him to be off work 20% of a workday, that hypothetical individual would be unemployable. (R. 83-87).

**III. Medical evidence.**

    **a. Dr. Sweet.**

Dr. Constance M. Sweet has been Plaintiff's primary care physician throughout the relevant (post January 9, 2012) time period. The record reveals the Dr. Sweet saw him on at least twenty-three occasions between Plaintiff's alleged onset date and the time of his hearing. On each of these occasions Dr. Sweet diagnosed degenerative disc disease of the cervical and lumbar spine, depressive disorder, and gastroesophageal reflux disease (GERD). Dr. Sweet's progress notes uniformly assessed that Plaintiff was alert and in "no distress" and, on all but a few occasions (December 19, 2012; March 25, 2014; and May 8, 2015), that Plaintiff presented with "normal gait". On a few occasions Dr. Sweet recorded extreme emotional distress and anxiety which caused her to refer Plaintiff to a psychiatrist. (Exhibits 8-10 through 8-13).

By way of objective testing, Dr. Sweet referred Plaintiff for an MRI on May 15, 2014. The MRI disclosed bulging discs at L3-4, L4-5, and L5-S1 without focal herniation. Degenerative

arthritis of the facet joints combined with a bulging disc was found to produce "a mild degree of central canal spinal stenosis at L4-5." (R. 422).

Dr. Sweet referred Plaintiff to Dr. Bruce H. Levin at Memorial Hospital in Towanda, Pennsylvania for cervical foraminal epidural steroid injections. These procedures were performed on July 8, 2015 at C4-5 and C6-7. (R. 499-5). Dr. Sweet's office note of August 7, 2015 (R. 572) reports that the injections had not helped much thus far. Her office note of November 8, 2015 (R. 578) reports that the injections had failed and that a spinal stimulator would be prescribed. Plaintiff indicated at his hearing that the spinal stimulator had proven unhelpful. (R. 73-74).

On July 8, 2015 Dr. Sweet executed a Medical Source Statement (R. 49-493)in which she opined that Plaintiff: could never lift or carry any weight; could sit, stand and walk for a total of no more than six hours in a day; needs to lay down frequently; needs a cane to ambulate and can walk no more than fifty feet without one; could occasionally climb stairs and ramps but never climb ladders or scaffolds, balance, stoop, crawl, crouch, or crawl; could never be exposed to unprotected heights, moving machinery, humidity, dust, pulmonary irritants, extreme cold or heat, and vibrations; and only occasionally operate a

motor vehicle. Dr. Sweet found further that these limitations would last for twelve months or longer.

**b. Dr. Magurno.**

Dr. Justine Magurno saw Plaintiff once in her capacity as a consulting/examining physician. Dr. Magurno performed a medical examination during which she took an oral history of Plaintiff's complaints. Plaintiff related that he cooks three times each week, cleans three times each week, and shops once each week, all with the help of his girlfriend. Plaintiff's chief physical complaint was back pain radiating down his left leg and producing numbness in both hands. Plaintiff described his pain as nine on a scale of ten.

Dr. Magurno physically examined Plaintiff and found: that Plaintiff did not appear to be in any acute distress; that Plaintiff could stand on his heels and toes with difficulty; that he could perform a half squat while holding onto a counter top; that his gait was waddling, wide based, and ataxic; that he needed no help changing his clothes or getting on and off the examination table; and that he had moderate difficulty rising from a chair.

Plaintiff's neurologic examination disclosed; equal deep tendon reflexes in all extremities; sensory loss in the left leg with sensation preserved in the left foot; strength in all extremities to the extent of 4/5 or 5/5; and no muscle atrophy

evident. Dr. Magurno diagnosed: (1) disc disease and
retrolisthesis in the cervical spine; [2](2) ataxic gait; [3](3) disc
disease of the lower back; and (4) history of anxiety; attention
deficit hyperactivity disorders; and anger issues. Dr. Magurno
assigned Plaintiff a prognosis of "fair".

   Dr. Magurno also executed a Medical Source Statement in
which she indicated that Plaintiff: could occasionally lift and
carry up to ten pounds but never lift and carry more that ten
pounds; could sit for one hour at a time, stand for ten minutes
at a time and walk for five minutes at a time; could sit for six
hours, stand for one hour, and walk for forty-five minutes in
total in the course of an eight hour workday; could walk no more
than twenty feet without use of his cane; could use his free hand
to carry small objects while ambulating with his cane; could
continuously reach, finger, and feel bilaterally, frequently
handle bilaterally, and occasionally push and pull bilaterally;
could occasionally operate foot controls bilaterally; could
frequently stoop, occasionally climb stairs and ramps, kneel and
crouch, and never balance, climb ladders and scaffolds, or crawl;
and could continuously be exposed to humidity, dust, odors,

---

   [2] Retrolisthesis is an uncommon joint dysfunction that involves a vertebra slipping backward in relation to the vertebra immediately above or below it. (See www.helpline.com/retrolisthesis).

   [3] An ataxic gait is characterized by unsteady staggering movements. See www.hopkinsmedicine.org/neurology/ataxia.

extreme cold and heat, and vibrations, but never be exposed to unprotected heights or moving machinery; and could frequently operate a motor vehicle. Dr. Magurno found that the limitations she identified in Plaintiff would last twelve months or longer.

**c. Dr. Babbar**.

Dr. Jatinder Babbar, a psychiatrist, saw Plaintiff on at least twelve occasions between February of 2013 and May of 2014. Dr. Babbar's progress notes concerning these sessions consistently recite that Plaintiff displayed linear thought process, fair insight and judgment, and cognition grossly intact. Plaintiff exhibited reactive or constricted affect on each visit but for the last visit, that of May 13, 2014. On that occasion, Plaintiff's affect was appropriate. Plaintiff never exhibited evidence of delusions and only once, on April 15, 2014, did he express any homicidal or suicidal ideation. However, Dr. Babbar consistently assessed after each session that Plaintiff "is not evaluated to be in any imminent danger to self or others."

Dr. Babbar consistently diagnosed "depressive disorder NOS" and identified stressors such as death or loss of a friend, inadequate social support, difficulty with articulation, and adjustments to life-cycle transition (e.g. retirement). Dr. Babbar consistently assessed a global assessment of functioning score ("GAF") of 62, a score consistent with "mild" symptoms of depressed mood or insomnia and "some" difficulty in social or

occupational functioning. The record does not contain any assessment by Dr. Babbar as to Plaintiff's capacity for work.

**d. Dr. Perch.**

Dr. Paul A. Perch, a state agency psychologist, reviewed Plaintiff's treatment records from Dr. Babbar and Concerned Counseling Services as well as his academic record from Sayre Area School District. On the basis of that review, Dr. Perch found on June 20, 2014 that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to perform within a schedule and maintain regular attendance, the ability to carry out an ordinary routine in coordination with others, the ability to make simple work-related decisions, and the ability to work at a consistent pace without an unreasonable number of rest breaks. Dr. Perch also found that Plaintiff was not significantly limited in his ability to interact with the general public or coworkers and only moderately limited in his ability to respond appropriately to criticism from supervisors and to changes in the work setting. Dr. Perch stated: "Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks." (R. 122-129).

**e. Dr. Smith**.

Dr. Catherine Smith, a state agency medical doctor, also reviewed Plaintiff's treatment records and, on the basis of that review, concluded that Plaintiff had the residual functional capacity to occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand and/or walk up to six hours in an eight hour workday, and sit up to six hours in an eight hour workday. Dr. Smith also found that Plaintiff was limited in his ability to operate foot controls and that he should never climb ladders or scaffolds. Dr. Smith indicated that Plaintiff could balance, stoop, kneel, crouch and crawl only occasionally and that he should avoid exposure to extreme heat, extreme cold, wetness, humidity, excessive noise and vibration, poor ventilation, and moving machinery and heights. Dr. Smith concluded the Plaintiff had no manipulative, visual, or communicative limitations. Dr. Smith's overall assessment of Plaintiff's residual functional capacity was that he had retained the ability to perform light work with the various limitations she had identified. Dr. Smith rejected the opinions of Drs. Sweet and Magurno due to her perception that the former was "without substantial support from other evidence of record", and the latter was "an over estimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning." (R. at 130).

**IV. ALJ decision.**

The ALJ's decision (Doc. 8-2) was unfavorable to Plaintiff.
It included the following findings of fact and conclusions of
law:

1. The claimant meets the insured status
   requirements of the Social Security Act
   through December 31, 2015.

2. The claimant has not engaged in substantial
   gainful activity since January 29, 2012, the
   alleged onset date.

3. The claimant has the following severe
   impairments: depressive disorder, poly-substance
   dependence, cannabis abuse and degenerative disc
   disease.

4. The claimant does not have an impairment or
   combination of impairments that meets or
   medically equals the severity of one of the
   listed impairments in 20 C.F.R. Part. 404, Sub.
   part, Appendix 1.

5. After careful consideration of the entire
   record, the undersigned finds that the claimant
   has the residual functional capacity to perform
   sedentary work as defined in 20 C.F.R. 404.1567
   (a) and 416.967(a). The claimant can lift/carry

ten pounds frequently and up to twenty pounds
occasionally. He can stand/walk for more than
two hours total in an eight hour workday with
the use of a cane for ambulation. He has no
limitations on sitting. He can occasionally
balance, stoop, crouch, crawl, kneel, and climb
but never on ladders, ropes, or scaffolds. He
cannot perform pushing/pulling with the lower
extremities and he must avoid concentrated
exposure to temperature extremes of cold/heat,
wetness, humidity, vibrations, and hazards,
including moving machinery and unprotected
heights. Mentally, he can do simple, routine
tasks, but no complex tasks, in a low stress
environment. Low stress defined as only
occasional decision-making, occasional changes
in work setting, and occasional interaction with
co-workers, supervisors, and the public.

6. The claimant is unable to perform any past
relevant work.

7. The claimant was born on November 19,1967 and
was forty-four years old, which is defined as a
younger individual aged 18-44, on the alleged
disability onset date. The claimant subsequently

changed category to a younger individual age 45–
49.

8. The claimant has at least a high school
   education and is able to communicate in English.

9. Transferability of job skills is not material to
   the determination of disability because using
   the Medical-Vocational Rules as a framework
   supports a finding that the claimant "is not
   disabled" whether or not the claimant has
   transferrable job skills.

10. Considering the claimant's age, education, work
    experience, and residual functional capacity
    there are jobs that exist in significant numbers
    in the national economy that the claimant can
    perform.

11. The claimant has not been under a disability as
    defined in the Social Security Act, from January
    29, 2012 through the date of this decision.

**V.  Disability Determination Process.**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[4]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her

---

[4]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (Doc. 8-2 at 23).

## VI.  Standard of Review.

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla".  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence
> *vel non* of substantial evidence is *not*

merely a quantitative exercise. A single
piece of evidence will not satisfy the
substantiality test if the Secretary
ignores, or fails to resolve, a conflict
created by countervailing evidence. Nor is
evidence substantial if it is overwhelmed
by other evidence--particularly certain
types of evidence (e.g., that offered by
treating physicians)--or if it really
constitutes not evidence but mere
conclusion. *See Cotter*, 642 F.2d at 706
("Substantial evidence" can only be
considered as supporting evidence in
relationship to all the other evidence in
the record.") (footnote omitted). The
search for substantial evidence is thus a
qualitative exercise without which our
review of social security disability cases
ceases to be merely deferential and becomes
instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary

to analyze all evidence. If she has not done so and has not

sufficiently explained the weight given to all probative

exhibits, "to say that [the] decision is supported by

substantial evidence approaches an abdication of the court's

duty to scrutinize the record as a whole to determine whether

the conclusions reached are rational." *Dobrowolsky v. Califano*,

606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court

clarified that the ALJ must not only state the evidence

considered which supports the result but also indicate what

evidence was rejected: "Since it is apparent that the ALJ cannot

reject evidence for no reason or the wrong reason, an

explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg*

*v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal

quotation omitted).  Where the ALJ's decision is explained in

sufficient detail to allow meaningful judicial review and the

decision is supported by substantial evidence, a claimed error

may be deemed harmless.  *See*, *e.g.*, *Albury v. Commissioner of

Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not

precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d

Cir. 2000) ("[O]ur primary concern has always been the ability to

conduct meaningful judicial review."). Finally, an ALJ's decision

can only be reviewed by a court based on the evidence that was

before the ALJ at the time he or she made his or her decision.

*Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## VII. Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the

substantial evidence standard regarding the matters at issue

here, we note the Third Circuit has repeatedly emphasized the

special nature of proceedings for disability benefits.  *See*

*Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are

not strictly adversarial, but rather the Social Security

Administration provides an applicant with assistance to prove

his claim.  *Id.*  "These proceedings are extremely important to

the claimants, who are in real need in most instances and who

claim not charity but that which is rightfully due as provided

for in Chapter 7, Subchapter II, of the Social Security Act."
*Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d
837, 840 (3d Cir. 1974). As such, the agency must take extra
care in developing an administrative record and in explicitly
weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further,
the court in *Dobrowolsky* noted "the cases demonstrate that,
consistent with the legislative purpose, courts have mandated
that leniency be shown in establishing the claimant's disability,
and that the Secretary's responsibility to rebut it be strictly
construed." *Id.*

**B. Plaintiff's Allegations of Error.**

Plaintiff asserts that the ALJ erred in four respects which
require remand of this case or a reversal requiring the Court to
direct an award of benefits. We will consider these assertions
as presented.

**1. Whether the ALJ erred by improperly evaluating the medical
    evidence?**

Plaintiff argues that the ALJ ignored the treating
physician rule. (Doc. 11 at 25-26) Plaintiff correctly asserts
that the opinion of a treating physician is generally entitled
to great deference under the Agency's own rules and the case law
of the Third Circuit. This is more particularly true when there
is a long, longitudinal record created by the treating physician
that documents his treatment of the patient. *Morales v. Apfel*,

225 F3d 310, 317 (3d Cir. 2000). Indeed, when a treating physician's opinion regarding the severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, we (the SSA) will give it controlling weight." 20 C.F.R § 01.1527(c)(2). Yet, it is also the case that, where competing medical evidence exists, it is within the ALJ's authority to choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F3d 422,429 (3d Cir. 1999). The ALJ may even elevate the opinion of a non-treating, non-examining physician over that of a treating physician in an appropriate case. Morales, supra, at 317; see also 20 C.F.R. § 404.1527(f)(1).

In this case, Dr. Sweet certainly qualifies as a long-time treating physician who would, were her opinion that Plaintiff is completely disabled "well-supported by medically acceptable clinical and laboratory diagnostic techniques", be entitled to controlling weight. The record, however, does not reflect that reality. While Dr. Sweet saw Plaintiff regularly and often during the relevant period, a review of her progress notes does not adequately support her assessment that Plaintiff is completely incapacitated. Her findings throughout the relevant period are relatively benign as indicated by the ALJ. (R. at

19). The only objective testing in the record is a 2014 lumbar MRI accurately described by the ALJ as a study that "does not reflect any focal herniation, cord compression, or nerve root compression to support his (Plaintiff's) extreme complaints of pain and reported limitations." (R. at 20). The ALJ went on to discuss the fact that Dr. Sweet's progress notes do not reflect significant gait, sensory, or reflex deficits and that her treatment of the Plaintiff has been "routine and conservative consisting of Norco medication, one cervical injection, and one lumbar injection" over a treatment history spanning more than four years. (*Id.*) Our review of Dr. Sweet's progress notes persuades the Court that the ALJ's characterizations are accurate. Accordingly, we find that the ALJ provided valid reasons why she did not accord significant weight to Dr. Sweet's opinion. See Garrett v. Commissioner of Social Security, 274 Fed. Appx. 159, 163-64 (3d Cir. 2008).

Plaintiff also asserts that the ALJ "failed to identify any objective medical evidence that supports her conclusion of residual functional capacity (RFC) other than the Social Security Administration non-examining sources." (R. at 24). This assertion is simply inaccurate. Dr. Justine Magurno, a consulting/examining physician, was assigned "partial weight" by the ALJ. (R. at 21). Dr. Magurno executed a Medical Source Statement that can only be interpreted to support the ALJ's RFC

finding in this case. The ALJ's only deviation from Dr. Magurno's assessment of Plaintiff's work capacity is that she did not agree with Dr. Magurno's assessment that Plaintiff could occasionally operate foot controls. Accordingly, the ALJ found that foot control maneuvers were prohibited in crafting the RFC determination. The balance of the RFC closely tracks Dr. Magurno's findings. [5] Thus, Plaintiff's assertion that no objective medical evidence supports the ALJ's RFC determination must be rejected.

2. **Whether the ALJ erred by failing to include within her hypothetical question to the vocational expert all of Plaintiff's alleged impairments?**

Plaintiff's argument in this regard is that the ALJ did not incorporate into the hypothetical question various "limitations" that the ALJ rejected. These include Plaintiff's assertions: (1) that he is unable to lift any weight at all; (2) that he requires frequent breaks to recline which would be beyond those normally allowed in the work place; (3) that the ALJ's RFC determination did not account for his hand symptomology; (4) that the ALJ did not account for his memory loss; and (5) that the ALJ did not account for the fact that Plaintiff's use of a

---

[5] Dr. Magurno's findings certainly comport with the SSA's definition of sedentary work. See 20 C.F.R § 404.1567 (a).

narcotic pain medication would require that he be off tasks 20% of the workday. (Doc. 11 at 32-35).

There is no doubt that the VE's testimony constitutes substantial evidence only if the hypothetical question to which he responds "accurately portrays the claimant's individual physical impairments." *Burns v. Darnhart*, 312 F3d 113,123 (3d Cir. 2002). The ALJ must include within the hypothetical question all credibly established limitations. *Zirnsak v. Colvin,* 777 F3d 607, 614; *citing Rutherford v. Barnhart*, 399 F3d 546,554 (3d Cir. 2005)). "However, where a limitation is supported by medical evidence that is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical." Zirnsak, supra at 615. Thus, we must refer to our earlier discussion of the medical evidence.

Plaintiff's first three assertions regarding his ability to lift and carry, his need to frequently recline and rest, and his hand symptomology are refuted in the record by Dr. Magurno's assessment (pages 10-11 ante) of Plaintiff's limitations – – virtually all of which is incorporated into the ALJ's ultimate RFC determination.

Plaintiff's fourth assertion, that his memory loss prevents him from working, is refuted in the record by the Mental Residual Functional Capacity Assessment executed by Paul A.

Perch, a state agency psychologist. (Doc. 8-3). Dr. Perch specifically found that Plaintiff's ability to remember locations and work-like procedures and his ability to understand, remember, and carry out very short and simple instructions were "not significantly limited". (R. at 128). [6] The ALJ relied upon Dr. Perch's assessment (R. at 21) and included within the hypothetical question the restriction that Plaintiff be confined to work that involved only simple, routine tasks in a low-stress environment involving only occasional interaction with co-workers, supervisors, and the public. (R. at 80). The Court finds that the hypothetical question the ALJ put to the VE adequately accounted for Plaintiff's credibly established memory loss.

Finally, Plaintiff's fifth assertion is that he would be off task 20% of the time due to the effects of his narcotic pain medication. The Court has found nothing in the record to support this proposition and Plaintiff has certainly not provided any citation to that effect. Thus, the Court rejects the assertion that the ALJ should have included such a limitation in her hypothetical question to the VE.

---

[6] The only other professional to evaluate Plaintiff's mental capacity for work, Dr. Robert Hudak, opined only that Plaintiff had some indeterminate impairment in his ability to understand, remember, and carryout instructions. (R. 534). This non-specific assessment hardly refutes Dr. Perch's more specific one.

In sum, the Court agrees that the ALJ relied upon substantial evidence of record in electing not to incorporate each of the limitations Plaintiff has suggested.

3. **Whether the ALJ failed to fully develop the record and made an erroneous determination regarding Plaintiff's credibility?**

As Defendant acknowledges, an ALJ has a duty to develop the record and eliminate evidentiary gaps to resolve ambiguity in the evidence. (Doc. 12 at 21). Here, the ALJ relied upon Dr. Magurno's Medical Source Statement and Dr. Perch's Mental Capacity Assessment, both of which the Court has already found to constitute substantial evidence of record. Thus, there was no need to resolve ambiguity here. Dr. Sweet's benign progress notes, which contain little in the way of clinical or objective diagnostic evidence supporting total disability, are followed by her Medical Source Statement that starkly contrasted with the treatment record she had compiled. The ALJ was well within her authority when she subordinated Dr. Sweet's opinion to that of other medical evidence which was in no way ambiguous. The ALJ simply determined the Plaintiff's RFC on a quantum of evidence which the Court finds sufficient.

With respect to the ALJ's alleged failure to consider Plaintiff's long work record, it is obvious from our review of the decision that the ALJ was well aware of Plaintiff's work

history. An ALJ is not obliged to accept as true all subjective complaints of a claimant simply because that claimant has a long work history. Where, as here, credible medical evidence of record exists to support the proposition that a claimant is capable of some level of substantial gainful activity, such evidence cannot be disregarded because a claimant has a substantial work history. The ALJ's conclusion on this point will not be disturbed.

4. **Whether the ALJ erred by failing to consider all medical evidence of record?**

Plaintiff argues that the ALJ's decision is flawed in that she failed to accord significant weight to an IQ score which pre-dated the relevant time period and a GAF score Plaintiff was assigned during a psychiatric hospitalization that also preceded his alleged disability onset date. (Doc. 11 at 39-40). With respect to Plaintiff's previous IQ score, it does not demonstrate an inability to work in the context of his well-documented history of gainful employment as noted by the ALJ. (R. at 17). Clearly the Plaintiff's adaptive functioning negated whatever cognitive deficit he has over a long period of time and there is no evidence that his IQ or GAF scores have deteriorated during the relevant period. Moreover, the GAF score of 40, assuming its accuracy at the time of measurement, is merely a snapshot of Plaintiff's mental/emotional state on one day that

long preceded his alleged onset date. Thus, the ALJ's decision
to subordinate these tests results to later test results within
the relevant time period can hardly be considered a reason for
remand on this issue. As Plaintiff acknowledges, an ALJ is not
obligated to find evidence prior to the onset date to be
relevant or probative. Giese v. Commissioner of Social Security,
251 F. Appx. 799,804 (3d Cir. 2007); cited in Plaintiff's brief
(Doc. 11 at 43). For these reasons the Court will not fault the
ALJ for not assigning significant weight to pre-onset date GAF
and IQ scores.

**VIII. Conclusion.**

Where, as in this case, substantial evidence, that evidence
that a reasonable mind might accept as adequate to support a
conclusion, supports an ALJ's decision, the Court may not
disturb the result. *Hartranft v. Apfel*, supra at 360. This is so
even if the Court would have reached a different conclusion.
(*Id.*). Because the Court finds that the Agency's decision is
supported by the requisite substantial evidence, the Plaintiff's
appeal will be denied. An Order consistent with this conclusion
will be filed contemporaneously.

BY THE COURT


S/Richard P. Conaboy
Richard P. Conaboy
United States District Judge

Dated: July 24, 2018